Gladys Anna **HOLDEN**, Appellant,

v.

**Robert H. FINCH**, Secretary, U. S. Department of Health, Education and Welfare, et al.

No. 23523.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 22, 1970.

Decided May 17, 1971.

Mr. Richard C. Johnson, with whom Messrs. Robert H. Turtle and Ralph J. Temple, Washington, D. C., Attorney for the American Civil Liberties Union Fund of the National Capital Area, were on the brief, for appellant.

Mr. John O'B. Clarke, Jr., Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant, a federal employee in the classified service, complained in the District Court of the termination of her employment by the Department of Health, Education, and Welfare at the close of the probationary period. On cross-motions for summary judgment, appellees prevailed. This appeal presents two claims of error as undermining that judgment. One is that the dismissal was invalid because appellant had not been supervised, counselled, and

evaluated as contemplated by the Government's formulations of personnel policies. For the reasons set forth in the margin, we find no occasion on this score to disturb the District Court's ruling.[1] The other challenge is to the refusal of the Civil Service Commission to entertain an appeal from the departmental action. Our conclusion in this regard is that the Commission, in the light both of the relevant statutes and of the constitutional evocations peculiar to this record, read too narrowly the provision currently made by regulation for appeals to it by probationary employees.

I

Appellant, a sociologist with sound academic credentials and extensive experience in race relations, was appointed, effective January 11, 1965, an Education Research and Program Specialist in the Office of Education of HEW. By a memorandum dated December 23, 1965, Mr. Seeley, the head of the division in which appellant worked, recommended to the Personnel Director of the Office of Education that appellant's employment be terminated during probation.[2] Mr.

---

1. The directory, as distinct from the mandatory, character of the personnel instructions and standards for supervision and training relied upon by appellant in this branch of her argument has recently been settled in the main for this court by Donovan v. United States, 139 U.S.App.D.C. 364, 433 F.2d 522 (1970), cert. denied, 401 U.S. 944, 91 S.Ct. 955, 28 L.Ed.2d 225 (1971). A somewhat more difficult issue is presented by HEW's apparent failure to observe the instruction of the Federal Personnel Manual that a probationary employee is to be formally evaluated between the ninth and tenth months of service, but this court has not regarded this omission as invariably invalidating a termination. Kepler v. Celebrezze (No. 19,828, decided without opinion, May 6, 1966). In any event, we do not get from this record a sense that these matters of supervision are at the core of this controversy, or that they played any significant role in bringing appellant's employment to the crisis of termination. On the basis of appellant's own affidavits, it would not appear that she was un-

aware of any strains between herself and her immediate supervisor, or that the final expressions of dissatisfaction by the latter with her work came as a surprise.

2. Mr. Seeley's memorandum notes that he had discussed the matter of termination with appellant personally on December 21. Appellant alleges that Mr. Seeley told her in this conversation that "despite her competence and ability, he would have to recommend that [she] not be retained, among other things, because she was inflexible and not objective in her work because of her strong personal position on civil rights." In complaint and affidavit, appellant has also alleged that (1) her activities outside of office hours, particularly in the promotion of the housing objectives of the Washington chapter of CORE, were offensive to Mr. Seeley, although, so she asserts, they did not impair her work in the office, (2) her urging upon Mr. Seeley of stronger policy lines in respect of school integration was met with disfavor, and (3) Mr. Seeley, by a pattern

Seeley represented his conclusion to be that appellant "has not demonstrated that her general character traits and capacity are such as to fit her for satisfactory service;" and he enumerated the following respects in which he purported to find "a lack of aptitude and of cooperativeness:"

"A. Unwillingness or inability to accept direction except with manifest resentment and bad grace.

B. On one fairly substantial project, hostile and bitter response to cooperating with staff assigned to gather information from files assigned to her charge.

C. A lack of objectivity and a tendency to allow her emotional reactions on matters affecting civil rights to cloud sound judgment on how to handle inquiries or proposals assigned to her for staff work."

This recommendation was approved, and five days later Mr. Seeley wrote a letter to appellant advising that her employment would terminate on January 7, 1966.[3] This letter reiterated the three reasons contained in the earlier memorandum, although the third was revised to read as follows:

"3. Your failure to use sound judgment in handling inquiries and proposals assigned to you for staff work."

On January 7, 1966, appellant wrote a letter to the Secretary of HEW requesting review and a hearing on her termi-

nation. The Director of Personnel of HEW responded on behalf of the Secretary on January 10, in a letter which asserted that the notice of termination was in compliance with Civil Service Commission requirements, and that there was no provision for formal review or hearing apart from appeal to the Civil Service Commission on the ground of a violation of Subchapter 8–4(d) of the Federal Personnel Manual, which prohibits a termination action against a probationer based on "political discrimination except as required by law * * * sex or marital status * * * [or] a physical handicap if the duties of the position may be efficiently performed by a person with that handicap."[4]

On January 17, 1966, appellant filed with the Civil Service Commission a petition and affidavit asserting the invalidity of her termination.[5] A copy of this was apparently filed also with HEW, because there was further internal review of the matter within the Department, culminating in a second letter, dated February 1, 1966, from the Director of Personnel to appellant reaffirming the position taken earlier, and stating that "[T]he only appropriate avenue of appeal for you is that covered by paragraph [8–4(d)] of Chapter 315 of the Federal Personnel Manual, and is to the Civil Service Commission." On February 1, appellant retained an attorney, who filed a further petition with the Commission alleging that appellant's ter-

---

of intimidation and elimination, sought to discourage attempts within the office to raise the issue of whether the office under his leadership was discharging adequately its responsibilities in the matter of educational integration.

3. The record before us contains a confidential memorandum, dated January 6, 1966, to the Secretary of HEW from the Acting U.S. Commissioner of Education which supported Mr. Seeley by representing that appellant was not being terminated because of her deep commitments to the cause of civil rights, but because she had permitted "her emotions on civil rights matters to cloud

her judgment in performing her official duties."

4. The references to the Commission's regulations throughout this opinion are mainly as they existed at the time of the events in question. In 1969 there was a revision and rearrangement which did not, however, affect substance in respect of the issues before us.

5. The affidavit was accompanied by written statements signed by a number of the employees in appellant's office to the effect that she had been found by them to be a courteous, cooperative, and competent fellow worker.

mination was caused by political discrimination; and a further affidavit of appellant was submitted in support of this contention.

This affidavit asserted a belief that Mr. Seeley had, beginning in the summer of 1965, "initiated a pattern of activity to suppress, intimidate and eliminate staff members of the Office of Equal Educational Opportunities who participated in local, private, volunteer civil rights activity or who otherwise indicated a strong feeling that Negroes should have equal rights * * *." A number of incidents were cited as founding this belief. Appellant recited that she herself had "continued to work actively in Washington CORE, serving as Chairman of its Housing Committee, and continued to make recommendations and take positions in carrying out assignments that would advance the attainment of equal rights for all citizens as quickly as possible." Appellant insisted that her work performance had been satisfactory, and that the true reason for dismissal had been "her active, persistent efforts to achieve equal rights for all citizens * * *." She averred that her "civil rights organizational affiliation and activity" was political in character because it was "directed toward changing the character and structure of society," and that to terminate her employment for this reason was to engage in the forbidden political discrimination. The Commission was requested to set the matter for hearing so that appellant could "demonstrate the legal and factual basis of her claim."

On May 6, 1966, a letter was sent to appellant's counsel by the Chief of the Commission's Appeals Examining Office. After reviewing appellant's assertions, it was stated:

"That there was disagreement with the Acting Director's policy toward civil rights activity by staff employees does not support a conclusion that *partisan political considerations* were the underlying reasons for the removal of [appellant]." (Emphasis supplied.)

The letter concluded with a finding that the appeal was "not within the purview of Section 315.806" of the Commission's regulations, and was therefore to be denied without inquiry into the merits.[6]

Appellant pursued the matter to the Commission's Board of Appeals and Review. The Board, in a letter dated August 31, 1966, sustained the ruling of the Appeals Examining Office. The Board characterized appellant's allegations of political discrimination as founded upon "organizational activities and affiliation" which "may be recognized as [engaging] in programs seeking to influence the formulation of public policy, and to promote political action, in the area of civil rights." The Board went on to say:

"* * * However, the various laws, rules and regulations for which the Commission has specific enforcement authority, relating to political activity of Federal employees, have the particular and direct objective of insulating the Federal civil service from either reward or reprisal based upon political influences, specifically as resulting from affiliation with or support of recognized partisan political parties, their candidates for public office, or their political campaign activities. It is this specific protection against partisan political discrimination which is provided under the limited authority established by Part 315 of the Civil Service Regulations, governing the Commission's appellate review of agency decisions to terminate probationary employees * * *."

The Board concluded that "the facts and circumstances which have been alleged do not establish a substantive basis to

---

6. Section 315.806, relating to the appeal rights to the Commission of probationers, provides that a terminated probationer employee may appeal "a termina-tion not required by statute which he alleges was based on political reasons * * *."

conclude that [appellant's] termination may have been 'based on political reasons not required by statute,' within the meaning and intent of Section 315.806 of the Civil Service Regulations."

The District Court, upon the cross-motions for summary judgment pending before it and the administrative record so developed, granted appellees' motion without identification or discussion of its reasons for doing so.

## II

In this court the Government in its brief asserts generally that "there is no vested legal right to government employment," and that a federal employee, like any other, may be discharged at the will of the employer, absent any statutory or contractual provision to the contrary. It recognizes, however, that, continuously from the enactment of the Civil Service Act of 1883, 22 Stat. 403, the Congress has seen fit to provide "a limited statutory protection to some federal jobs, and the executive branch itself has added additional protections," in consequence of which the Government may not terminate federal employment in violation of any procedural or substantive rights accruing by reason of the particular employment. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Judicial review, so it is said, is significantly limited in scope, although "a court may examine whether an agency has discharged an employee in accordance with applicable statutes and regulations, for to deny someone those 'rights' would be to deny them due process of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)."

■ These principles are, by and large, unexceptionable, although the impact of the Constitution in all its manifold aspects, including the First Amendment, is arguably neglected in this sum-

mation. *See* Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). It is certainly true that, in the present state of the law, Congress may limit the full range of political activities which a federal employee might, without jeopardizing his employment, otherwise engage in. Congress has indeed done so in the Hatch Act, 5 U.S.C. § 7324, with respect to partisan political activities. United Public Workers, etc., v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). What is not so clear is whether federal employment, even in a probationary status, entails a forfeiture under any and all circumstances of statutory and First Amendment political rights of free expression in the realm of policies and ideas, and of freedom to associate with others, in and out of government, in the pursuit of what are, in the larger sense, political goals.

Congress has contemplated that "[t]he President may prescribe rules which shall provide, as nearly as conditions of good administration warrant, that there shall be a period of probation before an appointment in the competitive service becomes absolute." 5 U.S.C. § 3321. Under this authority, a period of one year has, by Commission regulation, been prescribed to this end. 5 C.F.R. § 315.802. In the Hatch Act itself, Congress has said that a federal employee, including one in a probationary status, retains "the right to vote as he chooses *and to express his opinion on political subjects* and candidates." (Emphasis supplied.) 5 U.S.C. § 7324(b).[7]

■ The executive branch by regulation has proscribed the termination of federal employees in the classified service, including probationers, based on "political discrimination except as required by law." This latter clause obviously means that engaging in political activity of the kind banned by the Hatch Act exposes civil service employees, pro-

---

7. Another section of the Hatch Act makes clear that its strictures do not extend to political activity in connection with "a question which is not specifically

identified with a National or State political party or political party of a territory or possession of the United States." 5 U.S.C. § 7326.

bationary or permanent, to lawful discharge. It does not give explicit notice that such employees may, for expression and association of an essentially political nature although not in the familiar partisan context, have their employment terminated, at least without the right to have the matter heard and determined upon appeal to the Commission.

The Commission has seen fit to interpret its regulation as confined to partisan political activity in the Hatch Act sense. It appears to believe that it has in terms excluded from the concept of political discrimination any conduct which does not fit into the traditional partisan mould of organized contention for elective political office. With all the deference to be accorded an agency's construction of its own regulations, we do not think the words used compel this reading. We think, moreover, that such a reading is at odds with the Congressional purpose, stated in the Hatch Act itself, that the statutory proscription of partisan political activity does not extend to the right of an employee "to express his opinion on political subjects," or to engage in political activity in connection with "a question which is not specifically identified" with political parties. We suggest, finally, that such an interpretation could not, compatibly with the First Amendment, be constitutionally maintained as against any and all activities involving speech and association relating to public policies of an essentially political, albeit non-partisan, nature.

This is not to say that, in certain politically sensitive areas of federal employment, the employing agency has no right to exact conformity to reasonable standards of circumspection and discretion in the pursuit, in and out of the office, of non-partisan political purposes. The functioning of an agency can be impaired, and its effectiveness in achieving its statutory missions can be blunted, by conduct, including speech and association, routinely available to the private citizen. People resign from public employment every day because of these

constraints, and because they believe they can be more uninhibited and more effective in their advocacy of public policies off, rather than on, the public payroll. The Constitution does not invariably relieve a federal employee from this stern and frequently difficult choice.

It may conceivably be, as the Government presses upon us, that appellant has put her personal policy preferences ahead of her obligation to be a useful and cooperative employee; and that her employer was in this instance justified in concluding that her continuance would impede the discharge by HEW of its statutory responsibilities. But neither we, nor the District Court, are warranted in so concluding on this record, which consists solely of untested affidavits and unexamined unilateral assertions. Surely it is one of the central purposes of the Civil Service Commission to inquire, by evidentiary hearing if necessary, into this tangle of assertion and counter-assertion, and to make a fair and rational judgment on the question of whether, as the Government insists, appellant subordinated her public duties to her personal prepossessions, or whether, as appellant alleges, her performance of the one was unimpaired by her indulgence of the other.

There is enough in the record before us to raise a nonfrivolous issue as to a possible entrenchment upon appellant's political rights of speech and association, limited though they may be in some degree by the special character of her employment. The determination of that precise degree is surely one of the most difficult problems faced by government administrators, and their judgments in good faith on this score are not lightly to be overborne by reviewing authorities who function in more sheltered surroundings. In this case the record suggests that the employing agency itself assumed that the question was appropriate for Commission inquiry, since appellant was expressly advised that her recourse was by appeal to the Commission. The Commission declined to entertain that appeal because of what we be-

lieve to be, in the light of the precise Hatch Act protections, its unacceptably narrow view of the jurisdiction it had held itself out to have.

It was the Commission's refusal to entertain this appeal which we believe to be in error. In these circumstances, we think the equities of both sides are best served by reversing the District Court and remanding the case to it for remission to the Commission for further proceedings consistent herewith.[8] The merits of appellant's claim of improper termination remain, of course, open. *See* Goodman v. United States, 138 U.S. App.D.C. 1, 7, 424 F.2d 914, 920 (1970).

It is so ordered.

---

8. We note that appellant's motion for summary judgment in the District Court sought alternatively a remand to the Commission for a hearing and determination of the validity of appellant's claim.