**LEAGUE OF UNITED LATIN AMERI-
CAN CITIZENS et al., Appellants,**

**v.**

**Robert E. HAMPTON, Chairman of the
United States Civil Service Com-
missioner, et al.**

**No. 72–1961.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 29, 1973.

Decided July 10, 1974.

Juan Rocha, Jr., San Antonio, Tex., for appellants. John R. Kramer, Washington, D. C., was on the brief for appellants.

Richard S. Vermeire, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and William H. Schweitzer, Asst. U. S. Attys., were on the brief for appellee.

Before BAZELON, Chief Judge, WILKEY, Circuit Judge, and VAN PELT,* Senior District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

This is an appeal from the dismissal of a class action instituted by the appellants on October 22, 1971, challenging the hiring practices of the United States Civil Service Commission and federal agencies with respect to Spanish-surnamed individuals. The appellants are: the League of United Latin American Citizens (LULAC), an incorporated association composed of Latin-American citizens concerned with economic and social problems that affect Spanish-surnamed individuals; the American G. I. Forum of the United States, Department of California, an incorporated association composed of Mexican-American veterans of the United States Armed Forces; and Edward R. Roybal, a Mexican-American member of the United States House of Representatives from California. The appellees are: the three Commissioners and the Executive Director of the Civil Service Commission, the Secretary of Health, Education and Welfare, the Postmaster General and the Administrator of Veterans Affairs.

Appellants alleged in their complaint that while Spanish-surnamed individuals comprise almost 7% of the Nation's population that only approximately 2.9% of the federal civilian employees are Spanish-surnamed and that this creates a prima facie case of discrimination. While the complaint purports to challenge all federal hiring policies, the only specific instances of claimed cultural and racial bias are the Federal Service Entrance Examination (FSEE) and the Clerk/Carrier Postal Examination. The complaint does not allege that any of the appellants, or any members of the appellant organizations, or any of the individuals whom the appellants claim to represent have taken the examinations in question or have been denied employment opportunities as a result of low scores received on those examinations. After hearing argument the district court granted the appellees' motion and dismissed the complaint.

The issues on appeal are: 1. Do the appellants have standing to bring this action, and 2. Did the appellants fail to exhaust their administrative remedies. We affirm.

The standing question is governed by Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), in which the Supreme Court held that the Sierra Club did not have standing to challenge federal officials from approving an extensive skiing development in the Mineral King Valley in the Sequoia National Forest. The Sierra Club is a membership cooperation with a special interest in the conservation and sound maintenance of the national parks, game refuges, and forests. In its complaint the Sierra Club did not allege that the challenged development would affect the club or its members in their activities or that they used the Mineral King area. The Court noted that the Sierra Club was well known for its historic commit-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

ment to protecting the environment from man's depredations, but held that, "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA." *Id.* at 739, 92 S.Ct. at 1368.

■ The Court noted that broadening the types of injury that may be alleged in support of standing was a different matter from abandoning the requirement that the party seeking the review must himself have suffered an injury. In the complaint in this case the appellants did not allege that they or any of their members had taken the examinations challenged or that as a result of such examinations that they had been denied employment. The appellants having failed to meet this basic requirement, the district court was correct in dismissing the action.

Our decision on the standing point is, of course, a sufficient ground upon which to affirm the judgment of the district court dismissing the complaint. Plaintiffs have, however, represented to this court that they are fully prepared to allege the requisite direct injury to one or more of their members. In these circumstances, it would be contrary to the interests of justice and a waste of judicial resources for this court now to fail to consider the exhaustion question, especially since plaintiffs' failure to exhaust was apparently the ground upon which the district court dismissed the complaint.

■■ It is a basic principle of administrative law that, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethelem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The appellants contend, however, that this case fits within the recognized exception that exhaustion is not required when it is

certain that the established administrative procedures would prove unavailing. They contend that adequate effective administrative procedures are not available to them and any attempt to resort to administrative procedures would be futile as those who would decide the case on the administrative level are precisely those against whom the claim of discrimination is made.

If an applicant feels that he was denied federal employment because of racial discrimination, he has the right to appeal to the Civil Service Commission and is entitled to a hearing before an examiner. The examiner then makes a recommendation to the Board of Appeals and Review, which issues the final decision. 36 Fed.Reg. 15446–48; see Executive Order No. 11478, 3 C.F.R. 457 (1972).

In support of their contention that resort to administrative remedies would be futile the appellants rely on Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), in which thirteen employees, including both Negroes and whites, brought suit against their railroad employer and their bargaining agent union alleging that they were acting in concert to deny all the plaintiffs promotions from carmen helpers to carmen solely to deny Negroes promotions because of race. The district court dismissed the suit, holding that the plaintiffs had failed to exhaust their contractual and administrative remedies, notwithstanding the claim that such attempts would be futile. The Supreme Court reversed and remanded the case for trial saying "employees alleging racial discrimination should [not] be required to submit their controversy to "a group which is in large part chosen by the [defendants] against whom their real complaint is made.' " *Id.* at 330, 89 S.Ct. at 551. In *Glover* the suit was brought against a private employer and a union and although there was a procedure where a grievance could be taken before the National Railroad Adjustment Board, that tribunal was composed of paid repre-

sentatives from the railroad companies and the unions. In addition, the Supreme Court held that the Board did not have any power to order the kind of relief necessary in order to end abuses of the sort claimed, even with respect to the railroad alone.

The situation in *Glover* is distinguishable from this case. Here the appellants failed to exhaust their administrative remedies not with private parties but with a governmental agency whose mandated responsibility it is to see that discrimination is eliminated in governmental employment practices. As the court stated in Neisloss v. Bush, 110 U.S.App. D.C. 396, 293 F.2d 873, 880 (1961), "Like our courts, our administrative agencies are founded on the principle of trust reposed in not only expert but trustworthy hands." *Neisloss* was an action brought by two shareholders of a company which had acquired control of a railroad. The shareholders sought to either require the Interstate Commerce Commission to investigate the acquisition of control and find it unlawful or to have the court review the Commission's orders. On three separate occasions the ICC had been asked by various parties to investigate several transactions leading to the acquisition of the railroad. On the first two occasions the ICC, unable to find sufficient grounds for investigation, denied the petitions seeking investigation. On the third occasion the Commission approved the acquisition. In seeking judicial review of the ICC actions the plaintiffs contended that further resort to the ICC would be futile since they were making claims of improper influence and bias in the ICC decisions. The court disagreed, saying, "[T]here are cases involving other agencies in which the courts of appeals have remanded for hearings by the agency on allegations of improper conduct and bias. The Interstate Commerce Commission has given evidence of being no less able to deal candidly with claims of bias." *Id.* at 293 F.2d at 879.

A similar result was reached by District Judge John Lewis Smith, Jr. in Douglas v. Hampton, 338 F.Supp. 18 (D.D.C.1972). The action was brought to enjoin further use by the Civil Service Commission of the Federal Service Entrance Examination as the primary means of entry into management positions with the federal government. Plaintiff's motion for a preliminary injunction was denied. The Commission's motion to remand to the Commission for the exhaustion of later-created remedies was granted. The court noted that the failure to exhaust later-created remedies did not deprive it of jurisdiction to hear the case but that it would remand the case in the interest of sound judicial administration. The court said:

"Plaintiffs' contention that remand is not appropriate because the Commission is a party is without merit. Remand may be ordered where the Commission not only is a party and has vigorously defended the issues being litigated, but has refused to entertain the matter when it was first brought before it. See Holden v. Finch, [144 U.S.App.D.C. 310], 446 F.2d 1311 (1971). Plaintiffs also advance the contention that the Commission has prejudged every important issue and that further proceedings before it under the new regulations would be futile. There has, however, been no showing that the Commission will act other than in accordance with law in developing the factual foundation upon which its decision should be based." *Id.* at 23.

The court noted that the Civil Service Commission had jurisdiction over the matter in dispute and a special proficiency in the matters presented in the suit.

We conclude that the mere assertion by the appellants that they will be unable to receive a fair and unbiased hearing and the contention that the decision makers have already prejudged their case is insufficient in this case to allow them to totally forsake their administrative remedies and continue with this suit in its present form.

■ A review of the basic reasons behind the exhaustion principle convinces us that the appellants should be required to exhaust administrative remedies before attempting to pursue their case in the federal courts. As set forth by the court in Sohm v. Fowler, 124 U.S.App.D.C. 382, 365 F.2d 915 (1966), an opinion written by Chief Judge Bazelon, a plaintiff should be required to exhaust his administrative remedies so long as resort to the agency is not obviously futile: 1. when the agency has sufficient authority to accord the appellant the relief he seeks, 2. to discourage forum shopping and the unnecessary waste of judicial energies and resources, 3. when a judicial opinion may be little more than an advisory opinion, 4. when agency action may grant the relief or drastically alter the issues, 5. when the case presents complicated and technical facts, the court should defer to the expertise and special knowledge of the agency, 6. when the resolution of the issues depends on the interpretation and application of the agency's regulations and the interest of uniformity the agency should be allowed to construe their own regulations, and 7. when agency consideration may narrow the issues and clarify the remaining questions thus aiding the court in its review. These reasons are given added force in this case due to the extremely broad range of actions challenged here and the broad range of relief sought. It is evident that by requiring the appellants to exhaust their administrative remedies, a court will be in a much better position to review and comprehend the issues, should it be required to do so, after the Civil Service Commission has had an opportunity to act upon any complaint which would be presented to it.[1]

■ The appellants also contend that the administrative procedures, set out above, are inadequate since there is no meaningful method for class or group action and therefore they were forced to turn to the courts for class relief. However, as recently pointed out by Judge Leventhal in Phillips v. Klassen, (No. 73–1013) 163 U.S.App.D.C. ——, 502 F.2d 362 (1974), "The doctrine requiring exhaustion of administrative remedies applies to class actions as well as individual actions. . . . [I]t is generally agreed that exhaustion by at least one member of the class is a necessary prerequisite for a class action. Where not even one member of the class has either pursued an administrative remedy or shown why one of the exceptions to the exhaustion rule is applicable, there is a barrier, absent unusual circumstances, to the class action." (502 F.2d at 369). Thus, even assuming arguendo, that the appellants had standing to bring this action, they would not be allowed to pursue this as a class action since none of them had exhausted the available administrative remedies and the district court could not under any circumstances have granted class relief.

For the reasons given we hold that the district court was correct in dismissing the action not only because the appellants did not have standing to bring this action but also because they had failed to exhaust their administrative remedies.

Affirmed.