Sylvester **BARRETT** et al.,
Plaintiffs

v.

**UNITED STATES CIVIL SERVICE COMMISSION** et al.,
Defendants.

Civ. A. No. 74–1694.

United States District Court,
District of Columbia.

Dec. 10, 1975.

Melvyn R. Leventhal, Charles Stephen Ralston, Bill Lann Lee, Jack Greenberg, Eric Schnapper, New York City, David Cashdan, Washington, D. C., Gabrielle Kirk McDonald, Houston, Tex., for plaintiffs.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Paul M. Tschirhart, Asst. U. S. Attys., Washington, D. C., for defendants.

## MEMORANDUM OPINION

RICHEY, District Judge.

This is an employment discrimination action brought by federal employees under the Equal Employment Opportunity Act of 1972 (EEOA), Pub.L. 92–261, 86 Stat. 103 *et seq.*, which amends Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1970), and extends procedural protections to federal employees complaining of employment discrimination. Jurisdiction is conferred, *inter alia*, by 42 U.S.C. § 2000e–16(c). Named plaintiffs Sylvester Barrett, a black man, and Gloria A. Williams, a black woman, are employees at the National Aeronautics and Space Administration's Johnson Space Center (hereinafter, NASA–JSC) at Houston, Texas. Each claims to be a victim of race discrimination, and plaintiff Williams alleges additionally that she is a victim of sex discrimination. In their complaint, plaintiffs also allege that systemic discrimination against blacks and women exists at NASA–JSC. Accordingly, they seek to represent, in a class action brought pursuant to Fed.R.Civ.P. 23(b)(2), all black and female employees of NASA–JSC who have been denied promotions on the basis of the alleged discriminatory practices and all black and female applicants for employment at NASA–JSC who have been refused employment on the basis of said challenged practices. Plaintiffs seek, for themselves and for the proposed classes, injunctive relief, employment promotions, back pay, and attorneys' fees.

Plaintiffs also challenge the regulatory scheme of the Civil Service Commission which, they allege, does not allow for the simultaneous processing and consideration of complaints of class and individual discrimination. On behalf of a proposed class of all persons who file complaints of systemic discrimination against agencies of the United States pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, plaintiffs seek a declaratory judgment that the defendant's policy of refusing to process, consider and resolve complaints of class and systemic discrimination advanced through individual complaints of discrimination is unlawful.

These proceedings had their genesis on the administrative level. Early in 1974, each plaintiff filed a formal complaint of discrimination with NASA, pursuant to Civil Service Commission regulations designed to carry out the mandate of the above-mentioned pertinent portions of the Civil Rights Act. The complaints were filed not only on behalf of the individual complainants, but also on behalf of certain classes of employees who, according to the complaints, were affected by the alleged discrimination. The agency accepted for consideration the complaints of discrimination as to the individual complainants, but refused to consider the complaints as to allegations of class discrimination because they were not presented to the agency in compliance with Civil Service Commission regulations. (The Civil Service Commission regulatory scheme, discussed in greater detail herein, provides, essentially, for the independent consideration of allega-

tions of individual and class discrimination.) Complainants appealed the agency's failure to consider the class aspects of their complaints to the Board of Appeals and Review of the Civil Service Commission. The Board upheld the agency's decision in October of 1974. Meanwhile, the individual complaints of discrimination were not resolved on the agency level. The complaint in this action was filed on November 20, 1974, pursuant to 42 U.S.C. § 2000e–16(c), which authorizes a civil suit in federal court within 30 days of final agency action on a complaint or, if the agency fails to take final action, 180 days after the complaint is filed with the agency.

The case is currently before the Court on four motions. The defendant-government has moved to remand this action to the agency and has also moved to dismiss portions of the complaint relating to the plaintiffs' challenge to an allegedly discriminatory pre-employment test, the Professional Admissions Career Examination (PACE).[1] Defendants have moved for a declaratory judgment with respect to the Civil Service regulatory scheme, discussed above, and for certification of this action as a class action with the plaintiffs representing the classes proposed in their complaint and substantive pleadings.

### I. *Motion to Remand.*

■ The government admits that this civil action was filed more than 180 days after the plaintiffs originally filed complaints with the agency. Nevertheless, the government would have this Court remand this action to the agency for a full exhaustion of named plaintiffs' administrative remedies. The government claims that, since the early part of 1975, plaintiffs have been unwilling to accommodate the agency's reasonable efforts to resolve these matters. It is perhaps unfair to accuse the plaintiffs, as does the government, of "intransigence" with respect to delay on the administrative level. First, the delay was due, essentially, to an apparently good-faith dispute (the merits of which are not before the Court) as to whether the complainants have a right to discovery on the administrative level. Second, the dispute and subsequent delay arose *after* the 180-day period had passed and plaintiffs had initiated this action.[2] In any case, this Court is of the opinion that the instant situation is governed by the recent decision of *Grubbs v. Butz,* 514 F.2d 1323 (D.C.Cir.1975). In *Grubbs,* Chief Judge Bazelon, for a unanimous panel, wrote:

> "The 180 day provision represents a Congressional determination that providing prompt access to the courts in discrimination disputes is so important that the administrative process will be given only a finite time to deal alone with a given dispute. Indeed, the Act is in part a response to Congressional realization that 'the doctrine of exhaustion of remedies . . .

1. The government's motions are encompassed by one formal title, "Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment," but the characterization above reflects the essential attributes of the relief the government seeks.

2. The government suggests that the date of filing in the agency should be October 18, 1974, when the Civil Service Commission affirmed the agency's refusal to consider the complainants' class allegations. It was not until that date, the government suggests, that the complaints before NASA "where well defined and capable of resolution." Government's Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, at 6. The consequence of the government's position, if accepted, is that the plaintiffs' civil complaint, filed November 20, 1974, would have been filed long before the 180-day period had expired. The flaw with that position, however, is that it was clear from the time the complaints were filed with the agency early in 1974 that the agency would have to process *at least* the individual aspects of the compliance. In this context, to accept the government's interpretation of the term "filing of the initial action," 42 U.S.C. § 2000e–16(c), would be contrary to the letter and spirit of the Act.

had become [a] barrier to meaningful court review.' Requiring a complainant to further pursue administrative remedies after fulfilling all the prerequisites to suit specified by the EEOA and, most importantly, after 180 days have elasped without final administrative action, would frustrate that response.

No appellate court has yet superimposed an exhaustion requirement on the statutory prerequisites to suit as set out in § 717(c). And, recently, our District Court in *Williams v. Mumford*, 5 FEP Cases 1042 (D.D.C.1973), held that, regardless of the availability of any further administrative remedy, a federal employee has a right to file a civil action under § 717(c) if final agency action has not been taken within the 180 day period.

Nor does the addition of a further exhaustion requirement to § 717(c) find support in the cases interpreting the analogous part of Title VII dealing with private employees' rights of action in discrimination cases. In *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court noted that the prerequisites to suit set out in the statute were the *only* ones that Congress meant to apply: '[W]e will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.' *Id.* at 798–99, 93 S.Ct. [1817] at 1822. Even before *McDonnell Douglas,* Courts of Appeals were unwilling to supplement the statutory scheme with any additional prerequisites that might delay or dilute a private complainant's full access into District Court.

Finally, 42 U.S.C. § 2000e–5(f) provides that 'it shall be the duty of the trial judge to assign the [discrimination] case for hearing at the earliest practicable date and to cause the case to be in every way expedited.' This explicit Congressional desire for ex-

pedition might be thwarted if trial judges were free to impose an exhaustion requirement over and above the 180 day provision for federal employment discrimination cases." 514 F.2d at 1328 (footnotes and parallel citations omitted.)

Applying *Grubbs* to this case, it seems clear that plaintiffs are entitled to maintain their action in federal court at this time, without regard to any further administrative proceedings (or lack thereof). It is true that under the Civil Rights Act of 1964, the Court can, upon request, exercise its discretion to remand the action to the agency for not more than sixty days. 42 U.S.C. § 2000e–5(f) (1). The government has so requested. But it is not clear that the sixty-day option is applicable in civil actions filed by federal employees. *Grubbs, supra,* 514 F.2d at 1328 n. 16. Moreover, even if it were applicable, this Court would not so exercise its discretion at this late date in the proceedings.

Accordingly, the motion to remand must be denied.

## II. *The Motion to Dismiss the PACE Claim.*

■ In their complaint, plaintiffs challenge as discriminatory, *inter alia,* the Professional and Administrative Career Examination (PACE), an examination administered to various classes of employees upon entry into the federal service. The government has moved to dismiss the PACE claim because: 1) the plaintiffs lack standing in that neither of the named plaintiffs has alleged that he or she has taken the test; and 2) plaintiffs have failed to pursue, much less exhaust, administrative remedies as to the PACE claim. In support of its motion to dismiss for lack of standing, the government cites the case of *League of United Latin American Citizens v. Hampton,* 163 U.S.App.D.C. 283, 501 F.2d 843, 844–45 (1974), in which a challenge to the predecessor of PACE was dismissed for plaintiffs' fail-

ure to allege that they or any of the members of the class which they represented had taken the examination in question. In support of its motion to dismiss for failure to exhaust administrative remedies, the government cites, *inter alia,* the case of *Douglas v. Hampton,* 512 F.2d 976, 988–90, (D.C.Cir. 1975), in which a challenge to the same examination involved in *League of United Latin American Citizens, supra,* was remanded to the agency for reconsideration under new regulations which the agency promulgated *after* initially rejecting plaintiffs' claims.

Plaintiffs in the instant action simply have not rebutted the government's claims as to their lack of standing and their failure to exhaust administrative remedies. Instead, plaintiffs' entire response in their substantive pleadings consists of the following rather cryptic passage:

> "Plaintiffs do not press for review of their challenge to the PACE examination at this time. Rather, in light of *Douglas v. Hampton* . . . the issue, as it affects NASA employees, should be held in abeyance pending a determination in the *Douglas* proceedings. However, in evaluating the claims of present NASA–JSC employees, an analysis of the impact of the now discarded FSEE examination [the PACE predecessor involved in *Douglas*], upon their opportunities for advancement is required." Memorandum in Opposition to Defendants' Motion for Judgment on the Pleading or in the Alternative for Summary Judgment, at 3 n. 2.

Plaintiffs informed the Court during oral argument on this motion that they did not intend to waive their PACE claim. It seems from the passage above that they recommend holding the PACE claim in abeyance pending further proceedings in *Douglas.* At the time that passage was written, it was not clear whether a certiorari petition would be filed in the Supreme Court in the *Doug-*

*las* case. Since that time, it has become clear that no certiorari petition will be filed. Thus, plaintiff would have us await, for currently unarticulated reasons, a determination of *Douglas* in the agency and the courts. In any case, plaintiffs have not indicated how they can clear the jurisdictional hurdles placed in their path by the government. It seems apparent to the Court that the PACE claim must be dismissed, without prejudice, should the plaintiffs bring the claim again to federal court with the requisite standing and after having exhausted their administrative remedies.

### III. *The Motion for Declaratory Judgment.*

Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, plaintiffs in effect move that this Court overturn the Civil Service Commission's regulatory scheme for processing and otherwise considering complaints of discrimination by federal employees. As noted above, the named plaintiffs filed complaints with the agency pursuant to the Civil Service Commission regulations for the processing of individual complaints of discrimination. See 5 C.F.R. §§ 713.211–222. In their complaints, plaintiffs made allegations of discrimination against certain classes and requested that said allegations be considered along with their individual complaints. The agency declined to consider the class allegations, however, pointing out that such allegations were properly made under a different regulation for the processing of complaints of systemic discrimination. See 5 C.F.R. § 713.251. The latter regulation, entitled "Third Party Allegations," involves a procedure whereby any "third party" may file a complaint of class discrimination which must be "unrelated to an individual complaint of discrimination." Plaintiffs contend that such a system of independent consideration of class and individual complaints of discrimination is unreasonable, in that discrimination

against an individual is merely a manifestation of a policy of systemic discrimination. Plaintiffs desire that the Court declare that the Civil Service Commission and federal agencies must process and resolve complaints of class discrimination which are advanced through individual complaints of discrimination. In this connection, plaintiffs deem it necessary that the Court order the defendant to draft new regulations, which will accurately reflect the above requirement.

Implicit in the plaintiffs' position are the conclusions that the framers of the EEOA, *amending* the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, envisioned actions brought by named complainants on behalf of classes of which they are members; and that it is therefore the Civil Service Commission's duty in effectuating the Act, see 42 U.S.C. § 2000e–16(b), to provide for the processing and resolution of such class actions. In the recent case of *Hackley v. Roudebush*, 520 F.2d 108 (D.C. Cir. 1975),[3] the Court of Appeals for this circuit gave a strong and convincing indication that the plaintiffs are correct in those conclusions. The central issue in *Hackley* was whether under the EEOA a federal employee is entitled to trial *de novo* in the federal courts once he or she has exhausted administrative remedies. *Hackley* was not a class action. But, in holding that the appellant Hackley was indeed entitled to trial *de novo,* the court discussed the availability of class actions under the Act, the agencies' related responsibilities, and the effect, if any, of the court's decision on the class action question. Although the portion of the opinion discussing these questions is somewhat lengthy, this Court republishes much of it below because it is so clearly pertinent to the issues before the Court in the instant case:

"Congress was aware of the importance of class actions in Title VII litigation, *see, e. g., Legislative History* at 1589–1590 (statements of Senator Javits), 1773 (statements of Senator Williams), and Senator Williams, in his section-by-section analysis of the final version of the 1972 Amendments, observed:

'In establishing the enforcement provisions under this subsection [706(f)(1)] and subsection 706(f) generally, it is not intended that any of the provisions contained therein shall affect the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure. *The courts have been particularly cognizant of the fact that claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant.* As a consequence, the leading cases in this area to date have recognized that *many Title VII claims are necessarily class action complaints* and that, accordingly, *it is not necessary that each individual entitled to relief be named in the original charge* or in the claim for relief. A provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee.'

*Legislative History* at 1847 (emphasis added). There is a strong federal policy of encouraging class action litigation in situations of pervasive discrimination, *cf., e. g., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and private sector litigants may bring class actions

---

3. The appellees in *Hackley* have been granted an extension of time in which to file for rehearing and/or suggestion for rehearing *en banc* until after the Supreme Court decides the case of *Chandler v. Johnson*, No. 74–1599, which involves the trial *de novo* issue central to *Hackley.*

even if only a single party has proceeded through the EEOC. *See e. g., Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969). Congress gave no hint that a federal employee's Title VII claims do not also 'involve considerations beyond those raised by the individual complainant' which can be adjudicated most efficiently through the class action device. Of course, given our holding that the federal employee 'civil action' is a trial *de novo* with the same concomitants of the private sector 'civil action', there will be no barrier to such salutary class proceedings in situations where a plaintiff otherwise satisfies the criteria of Rule 23. However, even if the District Courts were limited to review of the administrative record, it would appear that class action treatment after a single individual had exhausted his administrative remedies would be proper; as Senator Williams had argued, discrimination—particularly when it is systemic—is almost inherently appropriate for class treatment, and the CSC's regulations in effect require that agencies treat each individual's complaint broadly enough to encompass discrimination that may be practiced against others similarly situated:

> 'The [agency] investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, the treatment of members of the complainant's group identified by his complaint as compared with the treatment of other employees in the organizational segment in which the alleged discrimination occurred, and any policies and practices related to the work situation which may constitute, or appear to constitute, discrimination even though they have not been expressly cited by the complainant.'

5 C.F.R. § 713.216(a) (1974). Thus, in situations in which a complainant satisfies the criteria of Rule 23, the agency record should provide a sufficient . foundation for class relief even if review of that record is all that is required of the courts." 520 F.2d at 151–52 n. 177 (parallel citations omitted).

■ As this Court reads *Hackley*, the portions cited above clearly stand for the following propositions: 1) the legislative history of Title VII and the 1972 amendments thereto, and the systemic nature of discrimination itself, indicate that class actions both in the private and federal sectors were indeed envisioned within the scheme of the Act and its amendments; 2) even if no trial *de novo* were accorded federal complainants, class actions could be maintained after one prospective named plaintiff exhausted his or her administrative remedies; 3) accordingly, agencies must, regardless of the applicable standard of review in the courts, provide a forum for the consideration of class relief within the context of an individual complainant's allegation of discrimination and must be prepared to provide class relief, if appropriate; and 4) in fact, the current Civil Service Commission regulations can be interpreted as providing just such relief. This Court concurs in the reasoning of Judge J. Skelly Wright, the author of the opinion for the court in *Hackley*, and is in full accord with the conclusions reached therein and summarized above. The Court also notes that several other federal district courts have recently reached similar conclusions as to the availability of class actions for federal employees under Title VII and the necessity for only one plaintiff to exhaust his or her administrative remedies. *Chisholm v. United States Postal Ser-*

*vice,* C.A. No. C–C–73–148 (W.D.N.C. May 29, 1975); *Sylvester v. United States Postal Service,* 393 F.Supp. 1334, 1340–41 (S.D.Tex.1975); *Richerson v. Fargo,* 61 F.R.D. 641 (E.D.Penn.1974). *But see contra* cases cited in *Hackley, supra,* 520 F.2d at 152 n. 177 and *Pendleton v. Schlesinger,* 8 E.P.D. ¶ 9598 (D.D.C.1974), *Miller v. Staats,* C.A. No. 996–73 (D.D.C. Aug. 15, 1974), and *McLaughlin v. Callaway,* 382 F.Supp. 885 (S.D.Ala.1974).

■ In consideration of the above, the Court has no difficulty with the proposition that it should issue a declaratory judgment to the effect that the defendants must accept, process and resolve complaints of class and systemic discrimination which are advanced through individual complaints of discrimination filed pursuant to 42 U.S.C. §§ 2000e *et seq.,* and that they must provide class relief, if warranted, in such circumstances. However, the Court is troubled by the additional request which plaintiffs put forward as part of their motion for declaratory judgment that the defendants be ordered to redraft the Civil Service Commission regulations to assure that the purpose of the declaratory judgment is achieved. The *Hackley* court, as noted above, seemed to feel that the present regulatory scheme indeed encompasses precisely the relief plaintiffs ask: "[T]he CSC's regulations in effect require that agencies treat each individual's complaint broadly enough to encompass discrimination that may be practiced against others similarly situated: [citing pertinent portion of 5 C.F.R. § 713.216(a), which *is also cited herein at page 551 supra*]." 520 F.2d at 151 n. 177. But at least one observer finds that interpretation of the Commission's regulations dubious. Comment, *Federal Employment Discrimination: Scope of Inquiry and the Class Action Under Title VII,* 22 U. C.L.A.L.Rev. 1288, 1295–96 n. 62. Moreover, other Commission regulations within the same scheme seem to cast doubt on the proposition that the regulations already provide for the consideration of allegations of class discrimination in the context of individual complaints. For example, 5 C.F.R. 713.212 (b) provides:

"Sections 713.211 through 713.222 do not apply to the consideration by an agency of a general allegation of discrimination by an organization or other third party which is unrelated to an individual complaint of discrimination subject to section 713.211 through 713.222.   . . ."

The Commission's actions in the instant case affirming the agency's refusal to consider the allegations of class discrimination made in the named plaintiffs' individual complaints certainly supports the inference that the Commission itself regards its regulatory scheme as one which does not provide for the joint consideration of such allegations. See Exhibits B, D, F, and G to plaintiffs' Complaint filed in this action. In its substantive pleadings in opposition to this motion, the government characterizes the regulations as ones "which do not provide for class treatment of administrative complaints raised by individual complainants." Defendants' Opposition to Motions for Declaratory Judgment and Certification as Class Action, at 1. The government's position, of course, is that class allegations are processed independently under the Third Party complaint system. Whether the Third Party complaint system allows for the simultaneous consideration of individual complaints of discrimination is again open to interpretation. The pertinent regulation itself provides that complaints considered under the Third Party system must be "unrelated to an individual complaint of discrimination." 5 C.F.R. §. 713.251. In an inter-agency memorandum prepared by the Civil Service Commission in explanation of the Third Party System, the following warning is issued: "The third-party procedures are not in-

tended as a way of obtaining redress in individual cases without filing complaints personally and agencies should make certain that the third-party procedure is not misused in this manner." See Exhibit A to plaintiffs' Memorandum in Opposition to Defendants' Motion for Judgment on the Pleading or in the Alternative for Summary Judgment, and Memorandum in Support of Plaintiffs' Motions for Declaratory Judgment and Certification as Class Action, at 2. In the same memorandum, it is noted that "it is possible that a third party might mention individuals' names in citing examples of the kinds of actions on which general allegations regarding a personnel policy or practice are based." While such individuals cases are to be considered, "it should be understood . . . that the agency investigation . . . of general third-party allegations is not expected to cover individual cases in sufficient depth which necessarily would result in findings or decisions with respect to those individuals . . . ." *Id.* at 3.

█ This Court concludes that the very best which can be said for the Commission's regulations is that they are confusing and unclear as to whether they allow for the consideration of class allegations in the context of individual complaints, or vice versa. As the United States Commission on Civil Rights recently noted: "The Commission has not issued clear guidelines specifying what types of allegations are 'unrelated' to an individual complaint. It has consistently held, however, that complaints alleging discrimination against a particular class of employees, of which the complainant is a member, are not within the

purview of the standard complaint procedures." "A Report of the United States Commission on Civil Rights," at 68 (July 1975) (footnotes omitted), see Appendix B to 5 *The Federal Civil Rights Enforcement Effort* (1974).[4] This Court therefore concludes that the Commission has not met its obligations under Title VII of the Civil Rights Act, *as amended,* 42 U.S.C. §§ 2000e *et seq.,* in that its regulations do not clearly provide for the consideration, processing, and resolution of complaints of class discrimination advanced through and in the context of an individual complaint. The regulations must therefore be modified to reflect the Commission's recognition of its aforesaid obligation under the Act. This Court is sensitive to the fact that, as the Supreme Court has put it, "where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 371–72, 93 S.Ct. 1652, 1662, 36 L.Ed.2d 318 (1973). However, the instant case presents a situation in which the question is not *which* remedy is to be approved, but *whether* the remedy mandated by the Act—consideration of class allegations in the context of individual complaints, see *Hackley, supra,* 520 F.2d at 151–52 n. 177.—is in fact provided at all by the agency's regulations. In concluding that it is at the very least doubtful that such a remedy is provided, this Court has no choice other than to order the Civil Service Commission to modify its regulations, in accord-

---

4. The remainder of the paragraph quoted from above, while not pertinent to the instant discussion, is relevant to this motion in general. It reads: "In contrast, class and individual discrimination claims under Title VII have historically been treated simultaneously, since the Federal courts have long held that employment discrimination is, by definition, class discrimination. From the complainant's standpoint, severance of class issues from the individual claim in the administrative process can· be extremely detrimental because it may preclude collection and introduction of evidence relating to the class which may be highly material to the individual's case." "A Report of the United States Commission on Civil Rights," *supra* at 68–69.

ance with the Declaratory Judgment and Order issued of even date herewith.

### IV. *The Motion to Certify as a Class Action*

Plaintiffs have moved for certification of this action as a class action, with the named plaintiffs representing the following classes:

1) with respect to the declaratory judgment only, all employees in the federal service or applicants therefor;

2) with respect to those portions of the complaint directed at the alleged systemic discrimination at NASA, (a) all blacks and females presently employed at NASA–JSC who have been denied opportunities for advancement because of their sex and/or race, and (b) all blacks and females who have been refused employment at NASA–JSC because of their sex and/or race.

Plaintiffs seek to maintain this proposed class action under Fed.R.Civ.P. 23(b)(2). Defendants oppose certification as to all of the above classes and sub-classes.

■ As to the proposed class of all federal employees with respect to the declaratory judgment, the government has made the following point: "[S]uch a class is entirely unnecessary. If plaintiffs are ultimately successful as individuals, the effect of such a decision would automatically run to the benefit of the purported class in that the regulations would be declared invalid." Defendants' Opposition to Motions for Declaratory Judgment and Certification as Class Action, at 10. The Court concurs in defendants' observation. As present federal employees, plaintiffs have a right to bring this aspect of their suit in their own names. The remedy which the Court has defined as a result of their motion will, as defendants point out, automatically extend to all federal employees. Thus, it is unnecessary in this context to reach the class certifica-

tion issue. See 7 *Wright and Miller, Federal Practice and Procedure,* § 1771; *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799, 812 (5th Cir. 1974).

■ As to the class of all blacks and females who have been refused employment at NASA–JSC because of their sex and/or race, defendants point out that neither named plaintiff is alleged to have been refused employment at NASA–JSC on the basis of race and/or sex in the past. Fed.R.Civ.P. 23(a) requires that the class representatives be members of the class which they seek to represent. That requirement is not met in the instant case; therefore, the motion for class certification as to the class of all blacks and females who have been refused employment at NASA–JSC because of their sex and/or race must be denied. See 7 *Wright and Miller, Federal Practice and Procedure* § 1761; *Wilson v. Kelley,* 294 F.Supp. 1005, 1010 (D.Ga.) *aff'd per curiam,* 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968).

Plaintiffs apparently are, however, members of the proposed class of all blacks and females presently employed at NASA–JSC who allegedly have been denied opportunities for advancement because of their sex and/or race. In order to successfully maintain a class action as representatives of said proposed class, the plaintiffs must initially meet the requirements of Fed.R.Civ.P. 23(a):

—Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Plaintiffs have alleged that NASA–JSC employs some 137 blacks and 742 women. Obviously, the numerosity requirement is met, and defendants have not maintained otherwise.

—Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Here, as has often been recognized in employment discrimination cases, the "Damoclean threat of a racially discriminatory policy hangs over

the . . . class [and] is a question of fact common to all members of the class." *Hall v. Werthan Bag Corp.*, 251 F.Supp. 184, 186 (M.D.Tenn.1966). Thus, while it is true that each employee's case may pose a somewhat unique situation, "the weight of authority has held that in such cases where a pattern of discrimination is alleged, the common questions of law and fact predominate." *Richerson v. Fargo*, 61 F.R.D. 641, 642 (E.D.Penn.1974).

—Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As with Rule 23 (a)(2), the requirements of 23(a)(3) have been deemed satisfied by many courts when, as here, plaintiffs allege discrimination of a systemic nature. *See, e. g., Richerson, supra*, at 641–42.

—Rule 23(a)(4) requires that the representatives of the class "will fairly and adequately protect the interests of the class." It is clear that the named plaintiffs are vigorously pursuing their claim. Moreover, plaintiffs' counsel have broad experience in this field and have demonstrated their intentions and capabilities to pursue their duties and the cause of their clients vigorously and faithfully. That the plaintiffs will adequately represent the class is a proposition which has not, with good reason, been opposed by the defendants.

■ Having met the requirements of Fed.R.Civ.P. 23(a), plaintiffs must also qualify under one of the sub-sections of Rule 23(b). The plaintiffs seek to pursue this action under Rule 23(b)(2), as an action in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Actions such as the instant case have been singled out in the Advisory Committee Notes to Fed.R.Civ.P. 23(b) (2) as particularly suited to that provision, as "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." See 39 F.R.D. 98, 102. The defendants object to certification under (b)(2) because, *inter alia*, plaintiffs have included a demand for back pay in their complaint. But the Supreme Court recently confirmed the conclusions reached in most of the federal circuits that awards of back pay are certainly appropriate in cases such as the instant action. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); see also, *e. g., Rich v. Martin Marietta Corp.*, 522 F.2d 333, 339–42 and cases cited therein at 341 (10th Cir. 1975). It is true that, if discrimination is proven and if this Court eventually concludes that back pay would be an appropriate remedy in the instant case, difficult problems of computation may arise. But there are a variety of methods available, if necessary, for the computation of back pay by the Court or by a special master. See, *e. g., Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 258–63 (5th Cir. 1974).

■ Defendants also oppose certification of the class because, they allege, plaintiffs did not properly set forth their class action allegations in their complaint and thus violated Rule 1–13(a) of the Rules of the United States District Court for the District of Columbia. It is true that the plaintiffs appear to have failed to meet the technical requirements of Rule 1–13(a), but the information which that rule was designed to elicit was subsequently set forth in the plaintiffs' motion for class certification. It would be exalting form over substance to deny class certification at this point for plaintiffs' technical insufficiency, and the Court will not engage in such a senseless exercise. However, it should be emphasized to all parties that the Local Rules are meant to be followed and are taken seriously indeed by this Court. The Court expects that no additional violations of the Rules will occur.

### V. *Conclusion*

The government's motion to remand is denied. The government's motion to dismiss the PACE claims is granted. The plaintiffs' motion for declaratory judgment is granted. The plaintiffs' motion for class certification under Fed.R.Civ. P. 23(a) and 23(b)(2) is granted only as to the class of all blacks and females presently employed at NASA–JSC.

A Declaratory Judgment and Order has been issued of even date herewith.