John H. WILLIAMS

v.

TENNESSEE VALLEY AUTHORITY
et al.

No. 75–186–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Feb. 13, 1976.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Asst. Gen. Counsel, James E. Fox, Thomas F. Fine, TVA, Knoxville, Tenn., for defendant.

Bernard E. Bernstein, Knoxville, Tenn., for Salary Policy Employee Panel.

## MEMORANDUM

MORTON, District Judge.

This action is presently before the court pursuant to the hearing held on December 5, 1975, to determine the propriety of entertaining plaintiff's suit as a class action. The facts out of which the present controversy arose have been detailed in a previous memorandum and will not be repeated here.

The central question at issue here is whether, assuming the requirements of Rule 23 of the Federal Rules of Civil Procedure are met, this suit can be maintained as a class action under 42 U.S.C. § 2000e–16, despite the fact that other members of the class have not yet exhausted their administrative remedies.

Defendants argue that the language of 42 U.S.C. § 2000e–16(c), which authorizes civil litigation within thirty days of notice of "the final disposition" of an aggrieved employee's complaint, is jurisdictional in nature, and thus, only those employees who have actually received some "final disposition" of their grievance by the agency have standing to sue in federal district court. Therefore, defendants contend, plaintiff cannot maintain his suit as a class action since he is the only member of his alleged class who has exhausted his remedies at the administrative level.

In support of their position defendants rely on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In that case the Supreme Court held that the provision in the Social Security Act authorizing review of a "final agency decision" in district court constituted a "jurisdictional basis for the District Court's consideration" of the case. Hence, the Court reasoned, members of the plaintiff class who had failed to obtain the final decision of the agency respecting their grievance, had not met the

Avon N. Williams, Jr., Nashville, Tenn., for plaintiff.

jurisdictional prerequisite to district court litigation.

The specific language relied on by the Court appears in 42 U.S.C. § 405(g):

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of the decision or within such further time as the Secretary may allow.

Defendants focus on the term "final" in the above passage, arguing that *Salfi* stands for the general principle that "where any statute 'empowers district courts to review a particular type of decision . . . that type being those which are 'final' then those potential class members who have not secured such a decision have not met the 'statutorily specified jurisdictional prerequisite' and cannot proceed under the statute."

Such a reading of the case is, in this court's view, unnecessarily broad. The Court in *Salfi* was dealing with a very specific statute designed to accomplish a very specific purpose—namely, the resolution of individual claims which arise out of unique and independent factual backgrounds. Noticeably absent in typical Social Security claims are any allegations of systemic deprivations which might make class relief appropriate. It is simply too much to suppose that Congress anticipated class claims arising under the Social Security Act since the Act's entire thrust is toward providing relief on an individual, case by case basis.

The Equal Employment Opportunity Act, on the other hand, was expressly designated by Congress as a broad, remedial statute aimed at eliminating discrimination against certain "classes" of employees. The Senate committee report accompanying the 1972 proposed provisions of § 706 (42 U.S.C. § 2000e–5) of the Act made this purpose quite clear:

This section is not intended in any way to restrict the filing of class complaints. The committee agrees with the courts that Title VII actions are by their very nature class complaints and that any restriction on such actions would greatly undermine the effectiveness of Title VII. *Legislative History of the Equal Employment Opportunity Act of 1972,* at 436. 92nd Cong. 2d Sess. (Comm. Print 1972).

Not only is the nature and purpose of the Social Security Act markedly different than that of the Equal Employment Opportunity Act; a careful reading of the pertinent *language* of each statute demonstrates that their express procedural requirements are readily distinguishable.

As indicated above, defendants emphasize the "finality" requirement common to both statutes. A closer analysis of the provisions of the Social Security Act relied on in *Salfi,* however, reveals that not only is a final agency decision required, but that the decision must be rendered "after a hearing to which [the claimant] was a party." The hearing requirement is significant in two respects. First, it is a specific, finite event which must occur before a claimant can take his case to federal court, unlike the more generalized reference to "final action" or "final disposition" which appears in 42 U.S.C. § 2000e–16(c). Second, it emphasizes the individualized nature of a claim arising under its provisions by expressly specifying that the claimant be *a party to the hearing.* No such procedural specification appears in § 2000e–16(c).

Moreover, the Social Security Act specifically provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, the district court's function is expressly limited under the Act to a review of the administrative record. It is not surprising, then, that the Court in *Salfi* held a class action impermissible, since the district court would have no record to review for persons who had not exhausted their administrative remedies. Such is not the case under the Equal Employment Opportunity Act, for, if this court is correct in its conviction that a trial de novo is warranted under § 2000e–

16, the interests of each member of the class could be fully set forth at trial.

The holding in *Salfi,* then, is not controlling in the instant suit. See *Predmore v. Allen,* 407 F.Supp. 1067, 10 E.P.D. ¶ 10,260 (D.Md.1976). Defendants' contention that failure to exhaust available administrative remedies is a complete bar to district court litigation places too narrow a reading on the language of § 2000e–16 and certainly misconceives its primary objective. As the Supreme Court observed in *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969), the doctrine of exhaustion of administrative remedies "is applied in a number of different situations and is, like most judicial doctrines subject to numerous exceptions. Application of the doctrine to specific cases requires an under-, standing of its purposes and of the particular administrative scheme involved."

Looking, then, to the broad, remedial purpose of Title VII, and bearing in mind that "[r]acial discrimination is by definition class discrimination. If it exists it applies throughout the class . . . ." *Hall v. Werthan Bag Corp.,* 251 F.Supp. 184, 186 (M.D.Tenn.1966), the exhaustion requirement urged upon this court by defendants begins to take on the appearance of hollow procedural formality. If indeed the gravamen of the complaint is systemic discrimination against a class, then what purpose is served by requiring that each class member individually run that allegation through the administrative machinery before bringing it to federal court? If administrative tribunals perceive no discriminatory conduct in the practices or policies of the federal agency under examination in one case, it is unlikely that they will be persuaded of its existence in another. And while the factual pattern of individual cases may differ, the central question upon which relief is dependent in each is whether defendants are guilty of discrimination against the class as a whole. The equitable remedies available to the court are such that individual claims may be accommodated contemporaneously with or subsequent to the granting, if allowed, of class relief.

As this court declared in its previous memorandum filed in this cause on November 21, 1975, it is firmly convinced that Congress intended federal employees to have the same remedies as private sector employees under the Act. The procedural provisions applicable to private litigants are expressly adopted as governing federal litigants in § 2000e–16(d). It is now clear that private sector employees may maintain a class action under Title VII even though only one member of the class has exhausted his administrative remedies. See *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280, 294 (1975); *Tipler v. E. I. duPont de Nemours and Co.,* 443 F.2d 125 (6th Cir. 1971); *Carr v. Conoco Plastics, Inc.,* 423 F.2d 57 (5th Cir. 1970); *Barela v. United Nuclear Corp.,* 462 F.2d 149 (10th Cir. 1972); *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979 (1973). Thus, it is only reasonable to conclude that federal employees should be accorded the same right. Indeed, several courts have reached that very conclusion. See *Chisholm v. U. S. Postal Service,* 9 E.P.D. ¶ 10,212 (W.D.N.C.1975); *Ellis v. Naval Air Rework Facility,* 404 F.Supp. 377, 10 E.P.D. ¶ 10,422 (N.D.Cal. 1975); *Sylvester v. U. S. Postal Service,* 393 F.Supp. 1334, 9 E.P.D. ¶ 10,210 (S.D.Tex. 1975); *Keeler v. Hills,* 408 F.Supp. 386 (N.D.Ga.1975). *See also, Richerson v. Fargo,* 61 F.R.D. 641 (M.D.Pa.1974); *Barrett v. U. S. Civil Service Commission,* 69 F.R.D. 544, 11 FEP Cas. 1089 (D.D.C.1975); *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108, 152, at note 177 (1975).

The principles which support the allowance of class action suits by private employees are no less applicable in the federal sector. The distinction which defendants attempt to draw between the powers exercisable by the Civil Service Commission (CSC) and the Equal Employment Opportunity Commission (EEOC) in respect to granting affirmative relief to claimants is unpersuasive. For though it is true that the CSC exercises a quasi-judicial function in determining a federal employee's entitlement to relief under Title VII, neither its

hearing and pre-hearing procedures,[1] nor its track record [2] recommend it as an adequate surrogate for the district court.

 Defendants also argue that since plaintiff failed to raise class allegations in his administrative complaint, he is estopped to do so in the instant suit. This position finds support in several district court decisions. See, e. g., *Eastland v. Tennessee Valley Authority,* 9 EPD ¶ 9927 (N.D.Ala. 1974); *Williams v. Mumford,* 6 EPD ¶ 8785 (D.D.C.1973); *Handy v. Gayler,* 364 F.Supp. 676 (D.Md.1973); *McLaughlin v. Callaway,* 382 F.Supp. 885 (S.D.Ala.1974). But see the reasoning of the court in *Piva v. Xerox Corp.* 44 U.S.L.W. 2305 (Jan. 13, 1976).

This court, however, deems it appropriate to examine beyond procedural technicalities which, though important, should not be permitted to obscure the overriding purpose of Title VII—to identify and eliminate proscribed discrimination wherever, and to whatever extent, it exists. Thus, while plaintiff may not have articulated his class allegations at the administrative level with the finesse and precision which might be expected of an attorney, the administrative record demonstrates that plaintiff urged his class claims with sufficient force to put the Commission on notice that they formed a part of his grievance. Indeed, this fact was expressly acknowledged by the Board of Appeals and Review (B.A.R.) in its final decision of plaintiff's claim:

> As to complainant's general allegations that there was segregation of Blacks in the apprenticeship program, and that there was discriminatory hiring practices in the agency, these are more properly third party allegations. As such, they would be subject to different procedures than provided for processing individual complaints. Such allegations, however, are of relevance in an individual complaint when they might show a discriminatory environment which has a direct bearing on the matter forming the basis for the individual complaint. *The Board has taken into consideration these allegations in this light in adjudicating this case.* (emphasis supplied).

The fact, as pointed out in the foregoing passage, that plaintiff failed to file third-party allegations in connection with his class claims, is insufficient to defeat a class action in this court, for, as the court in *Barrett v. U. S. Civil Service Commission, supra,* observed, "the very best which can be said for the Commission's regulations is that they are confusing and unclear as to whether they allow for the consideration of class allegations in the context of individual complaints or vice versa." See also, *Keeler v. Hills, supra.*

The applicable regulations governing individual claims (5 C.F.R. §§ 713.211–713.-222) and third-party allegations (5 C.F.R. § 713.251) seem to be mutually exclusive. Section 713.212(b) provides that,

> Sections 713.211 through 713.222 do not apply to the consideration by an agency of a *general allegation of discrimination* by an organization or other third-party
> · · · ·

while section 713.251 requires that a third-party complaint must be "unrelated to an individual complaint of discrimination."

Thus it would seem that a federal employee who desired to combine his own claim with more pervasive class allegations would be effectively stymied by the CSC's own version of "Catch 22." [3] Given, then,

---

1. See p. 6 of this court's Memorandum filed in this cause on November 21, 1975.

2. See the critical commentary contained in H.R.Rep.No.92–238, pp. 24–25 (1971), and Sen. Rep.No.92–415, p. 14 (1971) U.S.Code Cong. & Admin.News 1972, p. 2137. See also, United States Commission on Civil Rights, *The Federal Civil Rights Enforcement Effort*—1974, Vol. V, "To Eliminate Employment Discrimination," pp. 61–86, 619–624 (July 1975), wherein a detailed and exhaustive critique of the CSC's performance in processing employment discrimination claims appears.

3. Moreover, the use of the phrase "organizations or other third parties" suggests that § 713.251 was intended as vehicle for general allegations by outside entities rather than as a means by which employees might allege class discrimination. This interpretation of the section is reinforced by the provision for notice to the claimant of his right to file a civil action, found in § 713.282. That section makes specif-

this rather confusing and ambiguous array of regulations, plaintiff's failure to file separate third-party allegations is excusable.

■ Having concluded that exhaustion by all members of the class is not a jurisdictional prerequisite to a class action in this court, the only remaining issue is whether plaintiff has satisfied the prerequisites of Federal Rule 23. Based on the information elicited at the hearing and the facts supplied in the numerous memoranda submitted in this cause, the court is satisfied that plaintiff meets all of the pertinent requirements of Rule 23 as to the class comprised of black persons *presently* employed by the Tennessee Valley Authority (TVA), who have allegedly been discriminated against in training, promotion, transfer, assignment, classification, and lay offs.[4] As to the class of black persons who have allegedly been *denied* employment on the basis of race by TVA, the court must reject plaintiff's attempt to represent them inasmuch as he is not a member of that class as required by Rule 23(a). See 7 *Wright and Miller, Federal Practice and Procedure,* § 1761; *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Barrett v. U. S. Civil Service Commission, supra.*

For the reasons hereinbefore stated, this suit will be certified as a class action in behalf of all blacks presently employed by TVA, or formerly employed and presently laid off, who have allegedly been discriminated against on the basis of race.

After appropriate discovery has been conducted, the court, on application by the parties, will have an additional hearing to determine the type of notice to be given to the members of the class.

The court takes note of the fact that the Court of Appeals for the Sixth Circuit has granted defendants' petition for permission to appeal the order entered previously by

this court in which a de novo trial was granted. The court is of the opinion that its holding in the present matter similarly involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation.

Accordingly, in the interest of judicial economy, the court will certify the instant holding, pursuant to 28 U.S.C. § 1292(b), as one proper for immediate appeal, thereby allowing the Sixth Circuit, if it deems it appropriate, to consolidate the two questions for argument and consideration.

---

ic reference to §§ 713.215, 713.217, 713.220, and § 713.221, all dealing with an individual complaint, but makes no reference whatever to § 713.251, which deals with third-party procedure. The presumption implicit in the foregoing regulations is that no right to file a civil action arises out of the filing of third-party

allegations. Thus, failure to file them could not possibly defeat the district court's jurisdiction.

4. This class will, of course, include blacks who *were* employed by TVA, but who have been laid off as a result of allegedly discriminatory practices.