John H. WILLIAMS et al.,
Plaintiffs-Appellees,

v.

TENNESSEE VALLEY AUTHORITY et
al., Defendants-Appellants.

Nos. 76–1606, 76–1607.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1976.

Decided March 28, 1977.

Herbert S. Sanger, Jr., Justin M. Schwamm, James E. Fox, Thomas F. Fine, Tenn. Val. Authority, Knoxville, Tenn., for defendants-appellants.

Avon N. Williams, Jr., Nashville, Tenn., Jack Greenberg, Charles Stephen Ralston, Bill Lann Lee, New York City, for plaintiffs-appellees.

Before EDWARDS, McCREE and ENGEL, Circuit Judges.

EDWARDS, Circuit Judge.

These are consolidated interlocutory appeals from two orders of the District Court in an employment discrimination case, 42 U.S.C. § 2000e–16 (1970). The first interlocutory appeal concerns the District Court's order holding that plaintiff was entitled to a trial *de novo* after submission of his complaint of race discrimination to a Civil Service Commission Complaints Examiner and to the Civil Service Appeals Board. The second interlocutory appeal concerns a memorandum and order of the District Court certifying the plaintiff class, and defining it.

Williams was employed by defendant Tennessee Valley Authority from 1968 to 1971, during which time he completed a grading and paving equipment apprenticeship. Thereafter on several occasions he applied for permanent employment as a heavy equipment operator. He claims that each time a less qualified white applicant got the job. TVA, on the other hand, claims that it rejected him not on racial grounds but because he was not qualified for the position.

Williams filed a handwritten complaint with TVA. When TVA rejected his complaint, he appealed to the Appeals Review Board of the United States Civil Service Commission. A hearing was held and a written opinion denying his complaint was entered on or about September 3, 1974. Appellee Williams then filed the current complaint in the District Court for the Middle District of Tennessee. The complaint sought a trial *de novo* on appellee Williams' claims of racial discrimination in TVA's failure to hire him. It also stated a broad class action alleging racial discrimination in TVA's employment practices generally.

The District Judge in preliminary proceedings held that appellee had a right to a trial *de novo*. He thereupon held a hearing upon the propriety of entertaining plaintiff's suit as a class action. At that hearing appellant TVA relied upon *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), for the proposition that in order to maintain a class action every member of the class had to exhaust administrative remedies. The District Judge found to the contrary. He held:

Congress intended federal employees to have the same remedies as private sector employees under the Act. The procedural provisions applicable to private litigants are expressly adopted as governing federal litigants in § 2000e–16(d).

Williams v. Tennessee Valley Authority, 415 F.Supp. 454, 457 (M.D.Tenn.1976).

■ It is now clear that a private sector employee who has exhausted his or her administrative remedies may maintain a class action under Title VII, even though no other member of the class has exhausted administrative remedies. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979, 985 n. 11 (1973); *Oatis v. Crown Zellerbach Corporation*, 398 F.2d 496, 499 (5th Cir. 1968). *See also Tipler v. E. I. duPont de Nemours & Co.*, 443 F.2d 125, 130 (6th Cir. 1971). The Supreme Court in footnote 8 in *Albemarle Paper Co. v. Moody, supra*, stated:

The petitioners also contend that no backpay can be awarded to those unnamed parties in the plaintiff class who have not themselves filed charges with the EEOC. We reject this contention. The courts of appeals that have confronted the issue are unanimous in recognizing that backpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members. See, *e.g., Rosen v. Public Service Electric & Gas Co.*, 409 F.2d 775, 780 (CA3 1969), and 477 F.2d 90, 95–96 (CA3 1973); *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (CA4 1971); *United States v. Georgia Power Co.*, 474

F.2d 906, 919–921 (CA5 1973); *Head v. Timken Roller Bearing Co., supra,* 486 F.2d [870 (CA6 1973)] at 876; *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–721 (CA7 1969); *United States v. N. L. Industries, Inc.,* 479 F.2d 354, 378–379 (CA8 1973).

The District Judge concluded:

For the reasons hereinbefore stated, this suit will be certified as a class action in behalf of all blacks presently employed by TVA, or formerly employed and presently laid off, who have allegedly been discriminated against on the basis of race.

Williams v. Tennessee Valley Authority, supra at 459.

The District Judge's memorandum also provided for an additional hearing (which has not yet been held) to determine the type of notice to be given to members of the class.

Subsequent to these proceedings, appellant TVA sought certification to this court as to both the *de novo* trial issue and the two class action issues, and District Judge Morton certified these issues as controlling questions of law. Thereupon in separate orders this court granted leave to appeal as to these issues.

Since the District Court action on granting *de novo* hearing in this proceeding and denying TVA's motion for summary judgment, this court has decided the *de novo* trial issue in *Abrams v. Johnson,* 534 F.2d 1226 (6th Cir. 1976), and more importantly, the Supreme Court has decided the same issue in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). We therefore affirm the District Court's order granting a trial *de novo.*

The second certified question pertains to exhaustion of administrative remedies in class actions. After the oral arguments in the instant case, the parties submitted written arguments based on *Simmons v. Schlesinger,* 546 F.2d 1100 (4th Cir. 1976), which was issued one day before the instant case was argued to this court. The Fourth Circuit in *Simmons* affirmed the District Court in refusing to certify a class action in a federal employment discrimination case because of failure to exhaust administrative remedies as to the class issue. The *Simmons* court took particular note of the District Court opinion in the instant case and distinguished it on the ground that here appellee Williams had presented not only his individual claims but also the class claims of discrimination at the administrative level.

While we agree with Judge Morton that appellee Williams did satisfactorily exhaust administrative remedies before the Civil Service Commission Board of Appeals and Review, we are not certain that Judge Morton's decision on certification of a class action in a federal employment discrimination case is reconcilable with much of the language in the *Simmons* opinion. Careful reading of the *Simmons* opinion suggests that its discussion of the "full arsenal of remedial powers" in the Civil Service Commission (CSC) review of discrimination claims might form a logical predicate for denial of any class action on racial discrimination charges by government employees and would support TVA's claim that no racial discrimination case could be brought except by each employee filing and processing his or her individual claim before the agency and the CSC.

We do not so read either Congressional intent in adopting the 1972 Amendments to Title VII (which amendments created a judicial remedy for discrimination in federal employment) or the interpretations of these amendments by the Supreme Court.

Dissatisfaction with complaint procedures of the CSC prior to 1972 and uncertainty about the requirement of exhaustion of administrative remedies were among the factors leading Congress to make judicial relief available to federal employees under Title VII. The House Report made these comments concerning CSC procedures prior to 1972:

A critical defect of the Federal equal employment program has been the failure of the complaint process. That process has impeded rather than advanced the goal of the elimination of discrimination

in Federal employment. The defect, which existed under the old complaint procedure, was not corrected by the new complaint process. The new procedure, intended to provide for the informal resolution of complaints, has, in practice, denied employees adequate opportunity for impartial investigation and resolution of complaints.

Under the revised procedure, effective July 1, 1969, the agency is still responsible for investigating and judging itself. Although the procedure provides for the appointment of a hearing examiner from an outside agency, the examiner does not have the authority to conduct an independent investigation. Further, the conclusions and findings of the examiner are in the nature of recommendations to the agency head who makes the final agency determination as to whether discrimination exists. Although the complaint procedure provides for an appeal to the Board of Appeals and Review in the Civil Service Commission, the record shows that the Board rarely reverses the agency decision.

The system which permits the Civil Service Commission to sit in judgment over its own practices and procedures which themselves may raise questions of systemic discrimination, creates a built-in conflict-of-interest.

Testimony reflected a general lack of confidence in the effectiveness of the complaint procedure on the part of Federal employees. Complainants were skeptical of the Civil Service Commission's record in obtaining just resolutions of complaints and adequate remedies. This has discouraged persons from filing complaints with the Commission for fear that it will only result in antagonizing their supervisors and impairing any hope of future advancement.

Aside from the inherent structural defects the Civil Service Commission has been plagued by a general lack of expertise in recognizing and isolating the various forms of discrimination which exist in the system.

H.R.Rep. No. 238, 92d Cong., 2d Sess. 23–24, U.S.Code Cong. & Admin.News 1972, pp. 2137, 2158; Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. 83–84 (Comm. Print 1972).

The Senate Report echoed the criticisms concerning the CSC and noted that requirements for exhaustion of administrative remedies were unclear:

One feature of the present equal employment opportunity program which deserves special scrutiny by the Civil Service Commission is the complaint process. The procedure under the present system, intended to provide for the informal disposition of complaints, may have denied employees adequate opportunity for impartial investigation and resolution of complaints.

\*　　\*　　\*　　\*　　\*　　\*

An important adjunct to the strengthened Civil Service Commission responsibilities is the statutory provision of a private right of action in the courts by Federal employees who are not satisfied with the agency or Commission decision.

The testimony of the Civil Service Commission notwithstanding, the committee found that an aggrieved Federal employee does not have access to the courts. In many cases, the employee must overcome a U.S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies. Moreover, the remedial authority of the Commission and the courts has also been in doubt. The provisions adopted by the committee will enable the Commission to grant full relief to aggrieved employees, or applicants, including back pay and immediate advancement as appropriate. Aggrieved employees or applicants will also have the full rights available in the courts as are granted to individuals in the private sector under title VII.

S.Rep. No. 415, 92d Cong., 2d Sess.; Legislative History of the Equal Employment

Opportunity Act of 1972, 92d Cong., 2d Sess. 423, 425 (Comm. Print 1972).

The United States Supreme Court has recently considered the legislative history of 42 U.S.C. § 2000e–16 (1970) in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), and *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In *Chandler*, the Supreme Court held that, under Title VII, federal employees enjoy the same right to a trial *de novo* in Federal District Court as do private sector employees. In *Chandler*, the Supreme Court said:

> Two themes dominated the debates, proposals, and committee reports which preceded the enactment of the Equal Employment Opportunity Act of 1972. The first was the inadequacy of the individually instituted and maintained trial *de novo* as an enforcement technique in the private sector under the Civil Rights Act of 1964.[8] The second was federal employ-

> [8] As stated in the Senate Report:
> "The most striking deficiency of the 1964 Act is that the EEOC does not have the authority to issue judicially enforceable orders to back up its findings of discrimination. In prohibiting discrimination in employment based on race, religion, color, sex or national origin, the 1964 Act limited the Commission's enforcement authority to 'informal methods of conference, conciliation and persuasion.'
> "As a consequence, unless the Department of Justice concludes that a pattern or practice of resistance to Title VII is involved, the burden of obtaining enforceable relief rests upon each individual victim of discrimination, who must go into court as a private party, with the delay and expense that entails, in order to secure the rights promised him under the law. Thus, those persons whose economic disadvantage was a prime reason for enactment of equal employment opportunity provisions find that their only recourse in the face of unyielding discrimination is one that is time consuming, burdensome, and all too often, financially prohibitive." Senate Report 4. [S.Rep. No. 92–415 (1971).]

> ees' lack of adequate internal safeguards against employment discrimination and Congress' perception of their lack of access to the courts to raise claims of job discrimination.

> *Chandler v. Roudebush, supra*, 425 U.S. at 848–49, 96 S.Ct. at 1954. (Footnote 9 omitted.)

In *Brown* the Supreme Court held that 42 U.S.C. § 2000e–16 (1970) (§ 717 of the Civil Rights Act of 1964, as amended) provides the exclusive judicial remedy for claims of discrimination in federal employment. The Court in *Brown* did refer to "rigorous exhaustion requirements" of § 2000e–16 and did note that that section establishes "complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment discrimination." *Brown v. General Services Administration, supra*, 425 U.S. at 831, 833, 96 S.Ct. at 1967. However, this language in the *Brown* decision does not require adoption of TVA's position here that every member of the class must exhaust administrative remedies in order to gain access to the federal courts under § 2000e–16.

Moreover, it is not clear that Congressional criticism of CSC procedures prior to 1972 no longer applies. Judge J. Skelly Wright, in dicta in *Hackley v. Roudebush*, 171 U.S.App.D.C. 376, 520 F.2d 108 (1975), observed:

> It is evident from a comparison of 5 C.F.R. Part 713 as it existed before and after the 1972 amendments that no substantial reform was effectuated to meet these congressional concerns. To be sure, the regulations were expanded to include, *inter alia*, provisions governing third-party allegations, the aggrieved employee's right to file a civil action in District Court, allegations of reprisal or coercion, and the necessity for various remedial actions where discrimination is found. However, no substantial changes were effectuated to meet many of the specific objections expressed in the House and Senate Reports. For example, although those Reports suggested that informal procedures may have impeded anti-discrimination efforts, the mandatory pre-complaint processing procedures have not been altered. Despite congressional criticism that an agency's responsibility for investigating and judging complaints lodged against it produces, at a minimum, an appearance of unfairness, and that the system creates a built-in conflict of inter-

est, the head of an agency may still reject a complaint under certain circumstances or cancel a complaint for "failure of the complainant to prosecute," and the provisions under which the defendant agency preliminarily investigates the charges are not modified in any relevant way.

Furthermore, the hearing procedures are only cosmetically altered, with the "hearing examiner" now denominated a "complaints examiner" but with the practical limitations on his independence and the fact that ultimate decision-making authority rests with the agency head persisting under the "revised" procedures. The examiner need have no legal training, and no rules of evidence govern the hearing; hearsay is explicitly rendered admissible and examiners are informed that the concept of "burden [of proof]" has *no applicability* to the hearing process. Moreover, the issues are delineated by the complaints examiner, and he rather than the complainant molds the agency record. And particularly important in evaluating the credibility of the agency proceedings as adequate fact-finding mechanisms, the examiner has no subpoena power and thus neither the complainant nor the examiner has the right to conduct discovery or secure compulsory process. Indeed, the CSC has frankly recognized that

> [t]he hearing is an adjunct to the investigation. *It is not an adversary proceeding but is an administrative proceeding designed to provide additional evidence.*

Office of Federal Equal Employment Opportunity of the Civil Service Commission, Discrimination Complaints Examiners Handbook 5 (April 1973) (emphasis in original). Furthermore, the head of the employing agency still makes the final agency decision on the complaint, and although the employee may appeal that decision to the CSC's Board of Appeals and Review, there is no right to a hearing of any type before the BAR.

Thus, contrary to Judge Gesell's pronouncement that the CSC has lived up to its obligations under Section 717 and has implemented procedures that meet congressional concerns, the CSC's nonadversarial fact-finding procedures and inherent structural defects persist essentially unchanged, and do not guarantee federal employees a full and fair hearing on their claims of employment discrimination; these persisting inadequacies at the least present an aura of unfairness and an appearance of conflict of interest which will continue to discourage federal employees from seeking to vindicate their rights before the CSC with any prospect of success.

*Hackley v. Roudebush, supra,* 171 U.S. App.D.C. 376, 520 F.2d at 137–41. (Footnotes omitted.)

Judge Wright further commented on the class action issue in a footnote:

Congress was aware of the importance of class actions in Title VII litigation, *see, e.g., Legislative History* * at 1589–1590

* [Legislative History of the Equal Employment Opportunity Act of 1972, 92d Cong., 2d Sess. (Comm.Print 1972)]

(statements of Senator Javits), 1773 (statements of Senator Williams), and Senator Williams, in his section-by-section analysis of the final version of the 1972 Amendments, observed:

> In establishing the enforcement provisions under this subsection [706(f)(1)] and subsection 706(f) generally, it is not intended that any of the provisions contained therein shall affect the present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure. The *courts have been particularly cognizant of the fact that claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant.* As a consequence, the leading cases in this area to date have recognized that *many Title VII claims are necessarily class action complaints* and that, accordingly, *it is not necessary that each individual entitled to relief be named in the original charge*

or in the claim for relief. A provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee.

*Legislative History* at 1847 (emphasis added). There is a strong federal policy of encouraging class action litigation in situations of pervasive discrimination, *cf. e. g., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and private sector litigants may bring class actions even if only a single party has proceeded through the EEOC. *See, e. g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (June 24, 1975); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir. 1968); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969). Congress gave no hint that a federal employee's Title VII claims do not also "involve[ ] considerations beyond those raised by the individual complainant" which can be adjudicated most efficiently through the class action device.

*Hackley v. Roudebush, supra* 171 U.S. App.D.C. 376, 520 F.2d at 152 n. 177.

In *Barrett v. United States Civil Service Commission,* 69 F.R.D. 544 (D.D.C.1975), Judge Richey issued a declaratory judgment that the CSC "must accept, process and resolve complaints of class and systemic discrimination which are advanced through individual complaints of discrimination filed pursuant to 42 U.S.C. §§ 2000e et seq., and that [CSC] must provide class relief, if warranted, in such circumstances." *Barrett v. United States Civil Service Commission, supra* at 552. In that case, the CSC had interpreted its own regulations, 5 C.F.R. § 713.211 et seq. (1976), as not permitting an individual complainant to allege class discrimination in administrative proceedings. In addition to declaring that the CSC must consider class claims in individual complaints, Judge Richey ordered the CSC to modify its regulations for the processing of complaints:

This Court concludes that the very best which can be said for the Commission's regulations is that they are confusing and unclear as to whether they allow for the consideration of class allegations in the context of individual complaints, or vice versa.

\* \* \* \* \* \*

This Court therefore concludes that the Commission has not met its obligations under Title VII of the Civil Rights Act, *as amended,* 42 U.S.C. §§ 2000e *et seq.,* in that its regulations do not clearly provide for the consideration, processing, and resolution of complaints of class discrimination advanced through and in the context of an individual complaint. The regulations must therefore be modified to reflect the Commission's recognition of its aforesaid obligation under the Act.

*Barrett v. United States Civil Service Commission, supra* at 553.

In a later case, Judge Richey noted that the CSC had accepted his judgment. *See Barrett v. United States Civil Service Commission,* 11 E.P.D. ¶ 10,794 n. 1 (D.D.C. 1976). The CSC has released proposed regulations for the processing of class discrimination complaints filed by federal employees. *See* 41 Fed.Reg. 8079–82 (1976).[1]

■ In light of the legislative history and judicial analysis set out above, we decline to adopt the proposition urged by appellant TVA that each member of the class must exhaust administrative remedies before the federal agency and the CSC as a prerequisite to obtaining judicial review of a class action alleging discrimination in federal employment.

■ As to the second certified question, we agree with the District Judge's reasoning and rulings 1) that a class action is appropriate in this case, and 2) that there is no requirement that each member of the potential class demonstrate exhaustion of administrative remedies.

■ As to the third certified question, we believe that the nature, size, and scope of

---

1. The proposed regulations have now been adopted. 42 Fed. Reg. 11807–11 (1977).

the class is subject to further amendment and definition after full hearings on this issue have been held. In this posture we believe that leave to appeal the question of "whether, if a class action can be maintained, the District Judge abused his discretion in certifying such a broad class" was improvidently granted, and in relation to this issue this court's order, filed April 23, 1976, is hereby vacated.

ENGEL, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from so much of the majority opinion as is contained in the last paragraph thereof, vacating leave to appeal the question of whether, if a class action can be maintained, the district judge abused his discretion in certifying such a broad class. Contrary to the majority, I would reach that question, and based on the record presented to us, I would vacate the order certifying the class and remand to the district court for further consideration.

As plaintiffs state in their brief, "It is clear from the complaint filed in this case that the main thrust of this action deals with the Cumberland Steam Plant." This being so, I think it was premature, at the very least, for the district court to have certified a class consisting of "all blacks presently employed by TVA, or formerly employed and presently laid off, who have allegedly been discriminated against on the basis of race." The operations of TVA are immensely varied and extend over many states and into widely diverse activities.

I view the power to alter or amend a class certification under Federal Rule of Civil Procedure 23(c)(1) as granting courts flexibility to make adjustments as the progress of a class action may dictate, but not as an alternative to the responsibility imposed to make as accurate and early a determination of the class as practically possible. It would, in my judgment, have been far preferable to permit reasonable discovery to continue before certification, bearing in mind, of course, as we held in *Senter v. General Motors Corp.*, 532 F.2d

511, 524 (6th Cir. 1976), that "race discrimination is peculiarly class discrimination."

It strikes me as unfair and an abuse of discretion for the court, by so broad a certification, to force the defendant to prepare a defense ranging over the entire scope of its activities when only a more limited objective is stated. Yet with the broad class certification, it cannot safely do less.

The early, accurate, and fair determination of the limits of a class action is one of the most valuable services a court can perform for the parties, and for itself. It gives manageability to the lawsuit; it assures fair notice to those whose interests may be affected; it is economical and respectful of the time and resources of both litigants and court; it assures orderly progress toward worthwhile ends.