Dorothy JAMES et al.,
Plaintiffs-Appellants,

v.

Donald H. RUMSFELD, Secretary,
Department of Defense, et al.,
Defendants-Appellees.

No. 76–2032.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1978.

Decided Aug. 1, 1978.

---

George M. Maurer, Jr., Zwerdling & Maurer, Judith A. Scott, Detroit, Mich., Karl W. Carter, Jr., American Federation of Government Employees, AFL–CIO, Washington, D. C., for plaintiffs-appellants.

James K. Robinson, U. S. Atty., L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., for defendants-appellees.

Before EDWARDS, CELEBREZZE and PECK,* Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the dismissal of plaintiffs' complaint alleging unlawful racial and sexual discrimination at the United States Army Tank Automotive Command (TACOM) in Warren, Michigan. Plaintiffs are all TACOM employees. We affirm.

Before filing this action, plaintiffs and others filed a so-called "third party allegation" of discrimination with TACOM, pursuant to 5 C.F.R. § 713.251 (1977), discussed *infra.* The gravamen of this charge was that TACOM had not properly implemented an affirmative action program it had adopted to enhance employment opportunities for minorities and women. Both TACOM and the United States Civil Service Commission (CSC) determined that TACOM had not lived up to the goals of its affirmative action plan but that this was not due to any agency discrimination and thus no corrective action was taken. This lawsuit followed in the district court, the plaintiffs seeking relief for themselves and others similarly situated.

The district court dismissed the complaint on the grounds that plaintiffs lacked standing since they had not adequately alleged personal injury, as required by *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Without going into the details of the complaint, we agree with the district court that it is completely devoid of any specific allegations that any one of the plaintiffs has suffered from racial or sexual employment discrimination. The district court also refused plaintiffs leave to amend the complaint, reasoning that no amendment could allege adequate jurisdictional facts. The court held that even if plaintiffs amended and alleged sufficient personal injury, their use of a third party allegation was not appropriate exhaustion of administrative remedies as required for federal employees. We also agree with this legal conclusion by the district court and uphold its refusal to grant leave to amend.

Section 717 of the Civil Rights Act of 1964[1] governs this action since it is the

---

* Judge Peck assumed senior status after oral argument in this cause.

1. 42 U.S.C. § 2000e–16, added by § 11 of the Equal Employment Opportunity Act of 1972:
 (a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.
 (b) Except as otherwise provided in this subsection, the Civil Service Commission

exclusive judicial remedy for claims of discrimination in federal employment. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

Section 717 * * * proscribes federal employment discrimination and establishes an administrative and judicial enforcement system. Section 717(a) provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin."

Sections 717(b) and (c) establish complementary administrative and judicial enforcement mechanisms designed to eradicate federal employment discrimination. Subsection (b) delegates to the Civil Service Commission full authority to enforce the provisions of subsection (a) "through appropriate remedies, including reinstatement or hiring of employees with or without back pay," to issue "rules, regulations, orders and instructions as it deems necessary and appropriate" to carry out its responsibilities under the Act, and to review equal employment

shall have authority to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section, and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Civil Service Commission shall—

(1) be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department and agency and each appropriate unit referred to in subsection (a) of this section shall submit an order to maintain an affirmative program of equal employment opportunity for all such employees and applicants for employment;

(2) be responsible for the review and evaluation of the operation of all agency equal employment opportunity programs, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each such department, agency, or unit; and

(3) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to equal employment opportunity.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. The plan submitted by each department, agency, and unit shall include, but not be limited to—

(1) provision for the establishment of training and education programs designed to provide a maximum opportunity for employees to advance so as to perform at their highest potential; and

(2) a description of the qualifications in terms of training and experience relating to equal employment opportunity for the principal and operating officials of each such department, agency, or unit responsible for carrying out the equal employment opportunity program and of the allocation of personnel and resources proposed by such department, agency, or unit to carry out its equal employment opportunity program.

With respect to employment in the Library of Congress, authorities granted in this subsection to the Civil Service Commission shall be exercised by the Librarian of Congress.

(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Civil Service Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

(d) The provisions of section 2000e–5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder.

(e) Nothing contained in this Act shall relieve any Government agency or official of its or his primary responsibility to assure nondiscrimination in employment as required by the Constitution and statutes or of its or his responsibilities under Executive Order 11478 relating to equal employment opportunity in the Federal Government.

opportunity plans that are annually submitted to it by each agency and department.

Section 717(c) permits an aggrieved employee to file a civil action in a federal district court to review his claim of employment discrimination. Attached to that right, however, are certain preconditions. Initially, the complainant must seek relief in the agency that has allegedly discriminated against him. He then may seek further administrative review with the Civil Service Commission or, alternatively, he may, within 30 days of receipt of notice of the agency's final decision, file suit in federal district court without appealing to the Civil Service Commission. If he does appeal to the Commission, he may file suit within 30 days of the Commission's final decision. In any event, the complainant may file a civil action if, after 180 days from the filing of the charge or the appeal, the agency or Civil Service Commission has not taken final action.

Sections 706(f) through (k), 42 U.S.C. §§ 2000e–5(f) through 2000e–5(k) (1970 ed. and Supp. IV), which are incorporated "as applicable" by § 717(d), govern such issues as venue, the appointment of attorneys, attorneys' fees, and the scope of relief. Section 717(e), finally, retains within each governmental agency "primary responsibility to assure nondiscrimination in employment. . . ."
*Id.* at 829–32, 96 S.Ct. at 1966 (footnote omitted).

Pursuant to its mandate in § 717(b), the CSC had, at the time this action began, promulgated regulations which required federal agencies to provide for two different administrative remedies.[2] The first, found in 5 C.F.R. §§ 713.211–713.222 (1977), required the agency to provide intra-agency review of individual discrimination complaints. Its coverage was set forth in 5 C.F.R. § 713.212 (1977):

(a) The agency shall provide in its regulations for the acceptance of a complaint from any aggrieved employee or appli-cant for employment with that agency who believes that he had been discriminated against because of race, color, religion, sex, or national origin. A complaint may also be filed by an organization for the aggrieved person with his consent.

(b) Sections 713.211 through 713.222 do not apply to the consideration by an agency of a general allegation of discrimination by an organization or other third party which is unrelated to an individual complaint of discrimination subject to §§ 713.211 through 713.222. (Section 713.251 applies to general allegations by organizations or other third parties.)

The second required administrative remedy, found in 5 C.F.R. § 713.251 (1977), required the agency to provide intra-agency review of overall personnel policies at the request of "third parties." Its coverage was set forth in 5 C.F.R. § 713.251(a) (1977):

(a) *Coverage.* This section applies to general allegations by organizations or other third parties of discrimination in personnel matters within the agency which are unrelated to an individual complaint of discrimination subject to §§ 713.211 through 713.222.

The language of both § 713.212(b) and § 713.251(a) made it clear that the two possible administrative remedies were distinct, although not mutually exclusive since a generalized third party procedure could possibly include grievances cognizable under the individual complaint procedure. The only administrative remedy pursued here was a third party allegation filed by plaintiffs and three others on behalf of their union local. The district court properly held that the third party allegation could not serve to meet § 717(c)'s exhaustion requirement and that only an individual complaint could, obviating granting leave to amend.

A Title VII suit in federal court is designed to provide specific relief for specific grievances. This is also the purpose of the individual complaint process in §§ 713.211–713.222. The third party allegation proce-

2. The regulations have since been amended, as discussed *infra.*

dure in § 713.251, contrariwise, was designed to provide a generalized overall review of an agency's personnel policies vis-a-vis alleged discrimination. The generalized inquiries and findings appropriate to a third party procedure, and evidenced in this case, are simply not a proper administrative foundation for litigation seeking specific relief.[3] The agency has not been afforded an opportunity to remedy specific grievances, which is one of the purposes behind the exhaustion requirement.[4]

Plaintiffs assert that even if a third party allegation is not appropriate exhaustion for an individual's federal Title VII suit, it should be sufficient exhaustion for a class action, as the complaint here seeks to bring. We disagree. This court has upheld the propriety of class actions in federal Title VII suits and held that all members of the class need not individually exhaust their administrative remedies. *Williams v. Tennessee Valley Authority*, 552 F.2d 691 (6th Cir. 1977). But *Williams* still required a class representative who had properly exhausted administrative remedies, which is not the case here. Class actions still make specific, albeit class-wide, allegations of injury which would not necessarily be covered by the generalized third party allegation procedure. Thus, even a class action could not have been maintained here unless at least one proper class representative had pursued the individual complaint procedure.

As noted, the CSC has amended its regulations. During the pendency of this appeal, the CSC revoked the third party allegation regulation, § 713.251, and put two things in its place. First is a new § 713.251 which simply permits the consolidation of two or more individual complaints of discrimination. 42 Fed.Reg. 11807, 11808 (March 1, 1977). Second is a new subpart, 5 C.F.R. §§ 713.601–713.643, mandating specific agency procedures to handle class complaints of discrimination. 42 Fed.Reg. 11807, 11808–11 (March 1, 1977). As to class actions, then, the preferred administrative route for meeting § 717(c)'s exhaustion requirement is now the filing of a class complaint initially at the agency level.[5] This route should be pursued by plaintiffs, if they so desire.

The judgment of the district court is affirmed.

EDWARDS, Circuit Judge, concurring in part and dissenting in part.

I agree with Judge Celebrezze's opinion only to the extent that it holds that appellants' complaint was vulnerable to a motion to dismiss for want of standing. I specifically reject footnotes 3, 4 and 5 as both unnecessary to decision and hypertechnical in their approach to standing. I also feel that appellants should have been granted their requested opportunity to attempt amendments to correct the deficiencies.

**3.** A technical reading of the regulations also reveals that old § 713.251 nowhere used the word "complaint" (save for a reference to the individual complaint procedure) but rather referred to an "allegation." Sections 713.211—713.222, however, frequently refer to a "complaint." Section 717(c) also refers to a "complaint of discrimination" in its grant of jurisdiction, suggesting that only individual "complaints" and not third party "allegations" can satisfy the exhaustion requirement.

**4.** The "futility exception" to the exhaustion requirement established in *Levers v. Anderson*, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945), is wholly inapposite to this cause. *Levers* did not involve a statutorily mandated exhaustion rule and only held that one need not petition an administrative agency for a permissive reconsideration in order to obtain review of agency action in a Court of Appeals.

**5.** We need not address the question of whether it is still sufficient, before bringing a federal class action, to have merely a class representative who has exhausted his individual administrative remedies. Although *Williams, supra,* suggests an affirmative answer, that case dealt with administrative relief begun before the effective date (April 18, 1977) of the new regulations. Litigants can avoid uncertainty by resorting to the administrative class complaint procedure prior to filing a federal class action in a district court.